UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                    File No.  1:04-CR-165

v.

                                    HON. ROBERT HOLMES BELL

JANET MAVIS MARCUSSE,
DONALD MAYNARD BUFFIN,
JEFFREY ALAN VISSER,

       Defendants.
_____/

## **O P I N I O N**

Defendants Janet Mavis Marcusse, Donald Maynard Buffin, and Jeffrey Alan Visser have each filed a motion for judgment of acquittal. The Government has filed a response opposing each motion. The Court has reviewed Defendants' motions as well as the Government's response and has concluded that Defendants' motions lack merit. Accordingly, the motions for judgment of acquittal are denied.

I.

The criminal charges against Defendants Marcusse, Buffin, and Visser stem from their operation of and participation in an investment company called Access Financial. Marcusse was the co-founder and leader of the organization, Buffin was a sales manager and eventually office manager, and Visser initially worked as a computer technician before becoming a sales representative and officer manager with Buffin.

Defendants, along with five other co-defendants attracted investors to Access Financial through various oral and written representations. Each Defendant told investors at various times that: 1) Access Financial was making large profits through legitimate, secret financial markets; 2) the investor's principal was secure and subject to little or no risk; 3) that Access was a legitimate 401k or IRA rollover company; and 4) that they could purchase a "church chapter package," consisting of a bank account in the church chapter name. This account would then be used to avoid income tax on the monthly "interest" checks the investors received.

The evidence presented at trial also showed that these representations were false. The high-yield "secret" investment markets did not exist, the monthly "interest" checks were paid from other investors' funds, not from legitimate investments, Access Financial did not handle retirement funds in a legal manner, Defendants spent the investors' funds through personal purchases, and the "church chapter package" was a vehicle for defrauding the Internal Revenue Service of approximately $1.6 million in income tax revenue.

All told, Defendants collected approximately $20.7 million from 577 investors. Defendants used approximately $8.4 million of the $20.7 million to make fake "interest" check payments giving the appearance of a successful investment company. Defendants spent the remainder on themselves or exhausted it through transactions which did not generate a return to investors.

Defendants and their co-conspirators were indicted in an eighty-three count indictment charging them with mail fraud, money laundering, conspiracy to defraud the United States, conspiracy to commit mail fraud, and conspiracy to commit money laundering. On June 14, 2005, after a four week trial, the jury returned guilty verdicts against each Defendant on all counts.[1]

## II.

A motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is "a challenge to the sufficiency of the evidence." *United States v. King*, 169 F.3d 1035, 1038 (6th Cir. 1999) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996)). The Court must view the evidence and all reasonable inferences therefrom in the light most favorable to the Government. *United States v. Crossley*, 224 F.3d 847, 855 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Consequently, a defendant claiming insufficiency of the evidence must overcome a heavy burden. *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)). A defendant's convictions must be upheld if "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995) (quoting *United States v. Riffe*, 28 F.3d 565, 567 (6th Cir. 1994)). Circumstantial and direct evidence are afforded the same weight,

---

[1] Prior to the completion of the trial, Defendants David Rex Albrecht, Diane Renae Boss, and Wesley Myron Boss each entered a guilty plea.

and a jury's determination can be supported solely by circumstantial evidence. *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (citing *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991); *United States v. Griffith*, 17 F.3d 865, 872 (6th Cir. 1994)). Defendants have challenged the sufficiency of the evidence for conviction on each count against them. The Court will address the sufficiency of the evidence as to each Defendant under each count in turn.

A.    Counts 1-39 Mail Fraud

A conviction for mail fraud requires proof of the following three elements: 1) devising or intending to devise a scheme to defraud; 2) involving a use of the mails; and 3) for the purpose of executing the scheme or attempting to do so. *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997). Proof of a specific intent to defraud is required to convict a defendant of mail fraud. *Id.* (quoting *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990). Defendant Marcusse contends that the evidence was insufficient to prove intent to defraud. Defendants Buffin and Visser argue the evidence was not sufficient to prove that they knew the "interest" checks mailed to investors were not interest from legitimate investments.

The evidence at trial showed that Defendants were actively involved in operating and promoting a scheme in which investors were promised high-yield investments, with virtually no risk to their principal investment, and were offered a vehicle through which their investment returns were shielded from income tax liability (the church chapter bank

4

accounts).  These representations were false.  In reality, Access Financial was a Ponzi scheme in which investors were paid "interest" checks from other investors' funds.  The remainder of the investor funds collected were spent by Defendants.  The Sixth Circuit has previously held that the question of intent to defraud in a Ponzi scheme "is not debatable." *Conroy v. Shott*, 363 F.2d 90, 92 (6th Cir. 1966); *see also In re Indep. Clearing House Co.*, 77 B.R. 843 (D. Utah 1987) (finding intent to defraud from "mere fact that a debtor was running a Ponzi scheme.").  Thus, the jury could reasonably infer an intent to defraud on the part of Defendants from their operation of a Ponzi scheme.

Additionally, each Defendant played a significant role in the operation of the fraud. Numerous witnesses testified that at various times Defendants Marcusse, Buffin, and Visser each made false representations to them about the success, safety, and legality of the Access Financial investments as well as the "church chapter" accounts.  With regard to Defendant Buffin, the evidence showed that he was listed as a sales manager for a large portion of the investor pool and that he told investors that investment returns from Access Financial were tax free because Access was a "church."  In addition, Buffin received thousands of dollars of investor funds which he converted to his own use and failed to report on his income tax returns.  Buffin also used the newsletters, "interest" checks, and church chapter accounts to promote Access Financial.  Finally, Buffin also served as office manager beginning in May 2001.  In this position he reassured investors that monthly "interest" checks would be

forthcoming, while he continued to receive new investor funds and convert them to his, and his co-defendants, own use.

With regard to Defendant Visser, he also served as sales manger for a number of investors and actively promoted the scheme. He also received investor funds which he converted to his own use without any accounting or records detailing the transfers. In addition, Visser also served as office manager with Buffin. During this time, Visser solicited and received new investor funds which he converted to his own use. Visser also assisted in producing the last newsletters during the collapse of Access Financial. Buffin, Visser, and Marcusse also submitted several frivolous pleadings in an attempt to forestall the grand jury investigation into Access Financial.

Finally, the jury also viewed portions of a two-day seminar in which each Defendant can be seen and heard attempting to create the image of a successful financial company. Defendant Marcusse is prominently featured in the seminar falsely stating that investors' funds were placed in high yield, low risk investment vehicles. Buffin and Visser also can be seen and heard at the seminar falsely reassuring investors that Access Financial was earning large profits and that their principal was safe.

From this evidence, the jury could reasonably conclude that Defendants participated in the fraudulent investment scheme with the intent to defraud and with knowledge that the "interest" checks mailed to investors were not, in fact, interest from investments.

B.    Count 40 Conspiracy to Commit Mail Fraud

In order to convict a defendant of conspiracy to commit mail fraud, the Government must prove "defendant knowingly and willfully joined in an agreement with at least one other person to commit an act of mail fraud and that there was at least one overt act in furtherance of the agreement."  *United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001). Circumstantial evidence that a reasonable person could interpret as showing participation in a common plan may be used to establish the existence of a conspiracy agreement. *Id*.

The Court finds that there was sufficient evidence from which a rational juror could have found that Defendants conspired together with each other, and others, to use the mails to defraud investors. In addition to the evidence outlined above regarding mail fraud, the jury also heard testimony that Defendants and their co-defendants operated Access Financial in a relatively close association with each other. Defendant Marcusse was the founder and "partner" in the company, along with Defendant George Terrance Besser. Buffin, Visser, Wesley Myron Boss, and Richard Muma were sales managers. Defendant Diane Renae Boss as well as Buffin and Visser acted as office managers during the scheme. Finally, Defendants David Rex Albrecht and William Edward Flynn worked as paid sales representatives. The evidence also showed that through false newsletters, "interest" checks, fraudulent "church chapter" accounts, and the May 2001 seminar, Defendants worked in agreement together to promote the image of a successful investment company. Further, the evidence clearly demonstrated that the use of the mails was an integral part of this scheme.

7

Defendants used the mails to send fraudulent monthly "interest" checks, newsletters, and promotional materials on the "church chapter" accounts.

The jury also heard evidence that Defendants used multiple bank accounts as joint signatories, purchased assets and insurance using false tax returns and financial records prepared by one of the co-defendants, converted large sums of investor funds to their own use with no accountability or records of the transfers, established fraudulent "church chapters," and failed to report as income on their tax return any money received from Access Financial. In addition, Defendants also signed checks, investor forms, and church chapter forms claiming to be representatives of Access Financial.

From this evidence, the jury could conclude that Defendants Marcusse, Buffin, and Visser, along with their co-defendants, acted in concert and agreement with each other in a conspiracy to commit mail fraud.

C.   Count 41 Conspiracy to Commit Money Laundering

Defendants also contend that the evidence was insufficient to show that they conspired with anyone to commit money laundering. Defendants were convicted of money laundering conspiracy pursuant to 18 U.S.C. § 1956(h). To be guilty of this crime, the government had to prove beyond a reasonable doubt that: 1) two or more persons came to a mutual understanding to try to accomplish a common and unlawful plan to violate § 1956; and 2) Defendants knowingly and voluntarily joined the conspiracy. *See United States v. Meshack*, 225 F.3d 556, 573-74 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*,

535 U.S. 625 (2002). The government is not required to prove an overt act in order to obtain a conviction under § 1956(h). *See United States v. Bolden*, 325 F.3d 471, 491 (4th Cir. 2003). The evidence outlined above regarding Defendants' conspiracy to commit mail fraud also applies to this charge and demonstrates Defendants' agreement to promote Access Financial as a legitimate, successful investment company.

In addition, the jury also heard testimony that Defendants, along with at least one or more co-defendants, shuffled investor funds through multiple bank accounts, promulgated false income tax returns and financial documents in order to conduct transactions with investor funds, used multiple, layered financial transactions to purchase assets with investors' funds, and issued "interest" checks to give the appearance of a successful investment company. From this evidence, the jury could reasonably infer that Defendants and at least one other co-defendant entered into an agreement to conduct a financial transaction to promote the fraudulent investment scheme and/or to conceal or disguise the nature, location, source, ownership, or control of proceeds from the fraudulent investment scheme. *See* 18 U.S.C. § 1956(a)(1)(A)(i); (a)(1)(B)(i).

D.   <u>Count 42 Conspiracy to Defraud the United States</u>

Defendants contend that the evidence was insufficient to establish that they knowingly and willfully conspired together, or with others, to defraud the United States. The elements of this crime include: 1) an agreement between two or more people to accomplish an illegal objective against the United States; 2) one or more overt acts in furtherance of the illegal

9

purpose; and 3) intent to commit the substantive offense (impairing the function of the IRS). *See* 18 U.S.C. § 371; *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005); *United States v. Collins*, 78 F.3d 1021, 1038 (6th Cir. 1996).

In this case, there was sufficient evidence from which the jury could conclude that Defendants Marcusse, Buffin, and Visser conspired with at least one other co-defendant to defraud the IRS. Each Defendant received large sums of investor funds without any accounting or records detailing the transfers. These funds were then used for their own day-to-day expenses. Defendants set up non-interest bearing accounts in the name of churches specifically to shield their receipt of investor funds from the IRS. In particular, Buffin established two such accounts in his own name and Visser set up two accounts known as Parkside Ministries and Ridgeview Ministries. Investor funds placed in these accounts were used for each Defendant's personal benefit. In addition, none of the money placed in these accounts was reported to the IRS.

Defendants, however, did create fraudulent tax returns and other tax forms when attempting to obtain personal loans or insurance coverage. Defendants also engaged in multiple, layered financial transactions to purchase personal items using investor funds. Defendants also advocated illegal interpretations of the income tax laws in their newsletters to investors as well as during the May 2001 seminar. Defendant Marcusse, in particular, can be seen at the seminar advocating various illegal income tax avoidance methods.

From this evidence, the jury could reasonably conclude that Defendants knowingly and willfully conspired together to impede the function of the IRS in violation of 18 U.S.C. § 371.

E.   <u>Counts 43-57 "Promotion" Money Laundering</u>

These counts of the indictment address fifteen of the monthly "interest" checks sent to investors. Defendants assert that the evidence was insufficient to show that they knew the checks mailed to investors were the proceeds of unlawful activity and that the checks were intended to promote an unlawful activity. In order to prove the promotion version of money laundering, the Government needed to establish the following elements: 1) defendant conducted a financial transaction involving the proceeds of unlawful activity; 2) defendant knew the property involved was proceeds of unlawful activity; and 3) defendant intended to promote that unlawful activity. *United States v. McGahee*, 257 F.3d 520, 526 (6th Cir. 2001) (quoting *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999)).

The jury could reasonably conclude Defendants knew the "interest" checks were the proceeds from the mail fraud scheme run under the auspices of Access Financial. Further, there was sufficient evidence to conclude that Defendants intended to use the "interest" checks to promote the scheme. As outlined more fully above, Access Financial operated as a Ponzi scheme, funds from later investors were used to pay "interest" checks to early investors, thus giving the appearance of a legitimate investment company. This evidence demonstrates an intent to promote the scheme. *See United States v. Reed* 167 F.3d 984 (6th

Cir. 1999) (using proceeds from illegal activity to facilitate a scheme is sufficient to satisfy "intent to promote"); *United States v. Masten*, 170 F.3d 790, 797-98 (7th Cir. 1999) (holding that evidence was sufficient to support conviction under 18 U.S.C. § 1956(a)(1)(A) where defendant paid earlier investors with money received from new investors). The jury also heard numerous investors testify that the payment of the "interest" checks was a significant inducement to making an initial investment with Access Financial or to adding to their initial investment.

From this evidence, coupled with each Defendant's position within Access Financial, the jury could infer that Defendants Marcusse, Buffin, and Visser knew that the "interest" checks mailed to investors were the proceeds of the mail fraud scheme and that the monthly issuance of the checks served "to promote the carrying on" of the scheme. *See* 18 U.S.C. § 1956(a)(1)(A)(i). Marcusse was the leader of the operation and the jury could certainly conclude that she was in a position to know that the "interest" checks were the proceeds of the scheme and that the representations she made regarding Access Financial were false. Defendants Buffin and Visser, as well were positioned within the organization such that the jury could infer that they knew the "interest" checks were paid from investor funds, not actual investments. Specifically, Buffin and Visser both worked as sales managers and office managers of Access Financial. From these positions Buffin and Visser actively promoted investment in Access Financial. In fact, while working as office managers, both Buffin and Visser received new investor funds and converted them to their own use.

From this evidence it was reasonable for the jury to conclude that Defendants knew the "interest" checks were not from legitimate investment activity. Moreover, from their position in the company, it could be inferred that Buffin and Visser knew that the continual issuing of "interest" checks was a vital part of maintaining the appearance of a legitimate investment company. Accordingly, the evidence was sufficient to satisfy the elements of promotion money laundering against Defendants Marcusse, Buffin, and Visser.

F.    Count 58 Money Laundering

This count charged Defendant Marcusse with money laundering in connection with a $69,400 check which was used as a down payment on the purchase of her home. The government was required to prove the following elements: 1) defendant knowingly engaged or attempted to engage in a monetary transaction; 2) that defendant knew the transaction involved criminally derived property; 3) the value of the property was greater than $10,000; and 4) the property was derived from a specified unlawful activity. *See* 18 U.S.C. § 1957(a); *United States v. Ables*, 167 F.3d 1021, 1028-29 (6th Cir. 1999); *United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003).

Marcusse argues that the evidence did not show that she intended to conceal the nature of the proceeds of an unlawful activity. This is not an element of money laundering under 18 U.S.C. § 1957. Marcusse misconstrues the Government's burden of proof on this count with the elements of concealment money laundering under 18 U.S.C. § 1956(a)(1)(B)(i). *See McGahee*, 257 F.3d at 526 (discussing the elements of "concealment" versus "promotional"

13

money laundering under 18 U.S.C. § 1956). In order to convict Marcusse of money laundering under this count the Government was not required to prove intent to conceal. *See United States v. Haun*, 90 F.3d 1096, 1100 (6th Cir. 1996). Accordingly, Marcusse's motion for judgment of acquittal is denied as to this count.[2]

G.   Counts 66-71 Concealment Money Laundering

Counts 66 through 71 charged Defendants Buffin and Visser with money laundering in violation of 18 U.S.C. § 1956(a)(B)(i), the so-called "concealment version" of the money laundering statute. *See McGahee*, 257 F.3d at 526. Counts 66 through 68 charge Buffin with money laundering in connection with three transactions in which he deposited investor funds into his personal "church chapter" bank account, His Will Ministries. Counts 69 through 71 charge Visser with the same crime stemming from three transactions in which he deposited investor funds into his personal "church chapter" account, Parkside Ministries. Both Defendants argue the evidence was insufficient to show that the deposits were made to conceal the proceeds of illegal activity.

---

[2]Even if the Court were to evaluate the evidence relevant to the elements of money laundering under 18 U.S.C. § 1957, Marcusse's motion would be denied. The jury heard evidence that the financial transaction addressed in Count 58 involved the purchase of Marcusse's residence. This transaction was accomplished using false tax returns and employment records, as well as false documents purportedly specifying that the down payment on the home was a gift to co-defendant Diane Renae Boss from Marcusse. In addition, Boss posed as the purchaser of the home. In reality, when Boss was approved for the home loan and the closing occurred, Marcusse resided in the home and made the mortgage payments. This evidence was sufficient to support a conviction of money laundering.

The elements of concealment money laundering are: 1) use of funds that are proceeds of unlawful activity; 2) knowledge that the funds are proceeds of unlawful activity; and 3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds. *Prince*, 214 F.3d at 747. This type of money laundering is distinguished from promotion money laundering by the third prong, requiring the Government to prove Defendant knew the transaction was designed to conceal and disguise the nature, source, ownership, or control of the proceeds. *McGahee*, 257 F.3d at 526.

In this case, the evidence was sufficient for the jury to conclude that Defendants Buffin and Visser acted with the requisite intent to conceal the nature of the proceeds of the investment scheme. As set forth above, Buffin and Visser both actively participated in a Ponzi scheme and represented that investors would receive large returns with very little risk. The proofs showed that this representation and many others detailed above were false. The money from investors was actually channeled through a variety of layered bank accounts and a significant portion was transferred to Buffin and Visser. Such activity has been held to be sufficient to support a money laundering conviction. *See United States v. Hurley*, 63 F.3d 1, 12 (1st Cir. 1995) ("[Defendants] were involved in so many deposits and manipulative subdividings of funds that laundering was the only plausible explanation.").

In total, over $4 million of the $20.7 million collected from investors was appropriated and used by the Defendants. Buffin and Visser, in particular, deposited investor's money in

15

each of their personal "church chapter" bank accounts, His Will Ministries and Parkside Ministries. The jury heard the following evidence: that the monetary transfers to Buffin and Visser were not accounted for in any financial records of Access Financial, that each Defendant, including Buffin and Visser, promoted the "church chapter" account as a method to avoid the IRS and income tax liability, that neither Defendant reported the receipt of the funds on their income tax returns, but did use the proceeds from these transactions on personal day-to-day expenditures, and that both Defendants attempted to obstruct the investigation into Access Financial's handling of the investor funds. Based upon these circumstances, the jury could conclude that Defendants Buffin and Visser deposited investor funds into their personal "church chapter" accounts in order to conceal the nature of the proceeds of the mail fraud scheme.

H.     Counts 81-82 Concealment Money Laundering

Counts 81 and 82 charge Defendant Marcusse and Defendant William Edward Flynn with concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The elements of this crime are set forth in subsection G. Marcusse contends that the evidence was insufficient to show that she engaged in the financial transactions in order to conceal the nature of the proceeds of unlawful activity.

The jury heard evidence that the two transactions charged in these counts of the superseding indictment stemmed from the purchase of an airplane purportedly by Flynn. Count 81 encompasses a $5,000 transaction used as a down payment on the airplane. Count 82 is a monthly loan payment on the airplane made by Marcusse.

The jury heard testimony that Flynn purchased an airplane in April 2000 for $190,000. Flynn made an initial down payment of $5,000 using a check backed by investor funds. He obtained a loan to finance the remainder of the purchase price. In order to obtain the loan, false employment, investment, and tax records were created to give the appearance that Flynn had substantial income from Access Financial. In addition, Flynn testified that Marcusse directed Defendant Diane Renae Boss to prepare the false documents which enabled Flynn to obtain the credit for the purchase of the airplane. Further, the evidence also showed that Marcusse made one of the monthly loan payments with investor funds (Count 82). The evidence also showed that both Flynn and Marcusse were chauffeured in the plane between Wisconsin, Michigan, and Missouri on numerous occasions. Based upon the creation and use of fraudulent documents to obtain loan financing, as well as the use of investor funds to make the airplane loan payments, there was sufficient evidence from which the jury could infer that Marcusse engaged in the two transactions charged in Counts 81 and 82 with the intent to conceal the nature of the proceeds.

### III.

For the foregoing reasons, Defendants' motions for judgment of acquittal are denied. An order will be entered consistent with this opinion.

Date:   September 22, 2005          /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE